UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION ) ) | MDL 2804 |
| ) | Case No. 1:17-md-2804 |
| THIS DOCUMENT RELATES TO: ) ) | Judge Dan Aaron Polster |
| *Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana, et al. v. Purdue Pharma L.P.,* Case No. 1:18-op-45372 ) ) ) ) | **ORDER** |

Before the Court is a Motion to Remand filed by Plaintiffs Louisiana Health Service & Indemnity Company and HMO Louisiana, Inc. The Court has reviewed the Motion, Opposition Brief, and Reply Brief. For the reasons and to the extent stated below, the Motion is **GRANTED IN PART**. Specifically, Plaintiffs' claims against Defendant Frederick Floyd, M.D., are hereby **SEVERED** from this case and remanded to the 19th Judicial District Court for the Parish of East Baton Rouge. The Motion to Remand is otherwise **DENIED** as to all remaining Defendants.

I. Background

A. Pre-Transfer Briefing

Plaintiffs Louisiana Health Service & Indemnity Company (d/b/a Blue Cross and Blue Shield of Louisiana) and HMO Louisiana, Inc. filed a 270-paragraph petition in Louisiana state court against, among other defendants, multiple pharmaceutical companies. Plaintiffs seek monetary damages and injunctive relief for harms caused by the opioid public health crisis. Specifically, Plaintiffs allege the pharmaceutical companies engaged in a fraudulent marketing scheme to increase demand for prescription opioids; the scheme included, among other things, paying front groups and key opinion leaders (KOLs) to spread false and misleading information

about the safety and efficacy of prescription opioids.  *See* Petition (Doc. #: 1-3 in Case No. 1:18-OP-45372-DAP).  Plaintiffs contend this highly deceptive marketing campaign began in the late 1990s, became more aggressive around 2006, and continues today.  Petition ¶ 44.  As providers of health care benefits, Plaintiffs assert they paid higher costs for unnecessary opioid prescriptions, addiction treatment, and other overdose, emergency, and medical treatment for their members and insureds, due to Defendants' conduct.  Plaintiffs assert state law claims under Louisiana law for racketeering, unfair trade practices, and unjust enrichment.

In addition to naming pharmaceutical companies as Defendants, Plaintiffs also named five medical doctors.  Four of these doctors are KOLs who allegedly participated in the deceptive marketing scheme and were "instrumental in promoting opioids for sale and distribution nationally."  *Id.* ¶¶ 22-25, 137-152.  The fifth doctor, Frederick Floyd, M.D., allegedly operated two medical clinics as "pill mills" in New Orleans, Louisiana for about 20 months – from January 2015 until his medical license was revoked in August 2016.  *Id.* ¶¶ 26, 226-230.  Plaintiffs assert that, during this time, Floyd illegally dispensed to patients at least 2.4 million dosages of opioids without a legitimate medical purpose.[1]  *Id.* ¶ 229.  Floyd allegedly saw 50 to 70 patients per day, including many who lived far from the clinics and "were even provided with transportation to [the] clinics to ensure high patient volumes."  Id. ¶ 230.  Plaintiffs assert no marketing-related conduct whatsoever against Dr. Floyd in the six paragraphs of the petition where Floyd is mentioned.

Two of the pharmaceutical company Defendants, with the consent of the other Defendants, removed the action to the United States District Court for the Middle District of Louisiana, asserting diversity jurisdiction under 28 U.S.C. § 1332.  Other than Floyd, the Defendants are all

---

[1] Plaintiffs contend Floyd admitted to this behavior as part of a plea agreement with the federal government.  *Id.* ¶ 229.

citizens of states other than Louisiana,[2] while both Plaintiffs are citizens of Louisiana.[3] Floyd is also a citizen of Louisiana and, thus, not diverse from Plaintiffs.[4] In the Notice of Removal, Defendants assert Floyd's citizenship is irrelevant to determining diversity jurisdiction because Floyd is "an unnecessary and dispensable party subject to severance, procedurally misjoined, and fraudulently joined." Notice of Removal, ¶ 32 (Doc. #: 1 in Case No. 1:18-OP-45372-DAP).

Plaintiffs filed a motion to remand that was fully briefed and pending in the Middle District of Louisiana when the Judicial Panel on Multidistrict Litigation transferred the case to this MDL. *See* Docs. #: 4, 7, 15, 21, 33 in Case No. 1:18-OP-45372-DAP.

B. **Supplemental Remand Briefing in MDL**

On April 26, 2022, this Court initiated a process to address approximately 300 motions to remand pending in MDL cases, stating it would address these motions in tranches. *See* MDL Doc. #: 4389 at 3. The Court then issued rulings on the first tranche of 20 motions, *see* MDL Doc. #: 4502 ("*First Remand Order*").[5] The Court directed the parties to apply the rulings in the *First Remand Order* to other pending motions and identify: (1) cases the parties agree should be remanded; (2) cases the parties agree should not be remanded; and (3) cases about which the parties could not agree. *See* MDL Doc. #: 4594. The Court further instructed liaison counsel for plaintiffs

---

[2] The Defendant pharmaceutical companies are incorporated and have their principal places of business in states other than Louisiana. *See* Petition ¶¶ 3-21; Notice of Removal ¶¶ 11-26. Likewise, the four KOL doctors reside in states other than Louisiana. *See* Petition ¶¶ 22-25; Notice of Removal ¶¶ 27-30.

[3] *See* Notice of Removal ¶¶ 8-9; Memorandum In Support of Remand at 13 (Doc. #: 1-3 in Case No. 1:18-OP-45372-DAP).

[4] *See* Notice of Removal ¶ 32; Memorandum In Support of Remand at 14 (Doc. #: 1-3 in Case No. 1:18-OP-45372-DAP).

[5] *See In re Nat'l Prescription Opiate Litig.*, 2023 WL 166006 (N.D. Ohio Jan. 12, 2023).

3

and defendants to each select representative cases from the third category for supplemental briefing.[6]

The *Louisiana Health* case did not appear on the list of cases with pending remand motions identified by the parties. *See* Exhibit A to MDL Doc. #: 4594. The Court has nevertheless determined the *Louisiana Health* motion is ripe for ruling and that further briefing is unnecessary. As before, the Court directs the parties to apply the rulings in this *Order* to other pending remand motions. Within 30 days of the date of this *Order*, the parties shall identify those cases the parties agree should and should not be remanded, based on the Court's analysis and conclusions herein.

## II. Standard of Review

As the transferee court in these MDL proceedings, when reviewing Plaintiffs' challenges to removal, the Court applies federal law in accord with Sixth Circuit precedent. *See Williams v. Lockheed Martin Corp.*, 990 F.3d 852, 857 (5th Cir. 2021) ("Generally, questions of federal law in MDL-transferred cases are governed by the law of the transferee circuit."); *In re Gen. Am. Life Ins. Co. Sales Pracs. Litig.*, 391 F.3d 907, 911 (8th Cir. 2004) ("When a transferee court receives a case from the MDL Panel, the transferee court applies the law of the circuit in which it is located to issues of federal law.") (citation omitted); *In re Nat'l Prescription Opiate Litig.*, 327 F. Supp. 3d at 1068 (citing *In re Korean Air Lines Disaster*, 829 F.2d 1171, 1175-76 (D.C. Cir. 1987)).

Pursuant to 28 U.S.C. 1141(a), absent an express statutory exception, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States . . .

---

[6] On January 12, 2023, the Court also issued a *Second Remand Order* regarding cases removed under the Federal Officer Removal Statute, 28 U.S.C. § 1442, and to undertake the same process. *See* Doc. #: 4809; *In re Nat'l Prescription Opiate Litig.*, 327 F. Supp. 3d 1064 (N.D. Ohio 2018).

4

where such action is pending." Further, pursuant to 28 U.S.C. § 1441, a civil action that is otherwise removable based solely on diversity jurisdiction "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

Here, Defendants assert original jurisdiction under 28 U.S.C. § 1332, which requires, *inter alia,* complete diversity; that is, each defendant must be a citizen of a different state from each plaintiff. *Evanston Ins. Co. v. Housing Auth. of Somerset,* 867 F.3d 653, 656 (6th Cir. 2017). As the removing parties, Defendants bear the burden to establish the Court would have had original jurisdiction over the matter if Plaintiffs had chosen to file the case in federal court in the first instance. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006). The question of jurisdiction is determined as of the time of removal. *Rogers v. Wal-Mart Stores, Inc.,* 230 F.3d 868, 871 (6th Cir. 2000). Application of "the removal statute should be strictly construed and all doubts resolved in favor of remand." *Eastman*, 438 F.3d at 550 (quoting *Brown v. Francis*, 75 F.3d 860, 864-65 (3d Cir. 1996)).

### III. Analysis

Plaintiffs seek remand of this case to Louisiana state court, asserting the Court lacks subject matter jurisdiction. Specifically, Plaintiffs contend complete diversity does not exist between the parties because Floyd and both Plaintiffs are citizens of Louisiana. In response, Defendants urge the Court to sever the claims against Floyd pursuant to Rule 21 of the Federal Rules of Civil

Procedure. The Court agrees with Defendants that severance under Rule 21 is appropriate in the circumstances of this case.[8]

Pursuant to Rule 21, "the court may at any time, on just terms, … sever any claim against a party." Fed. R. Civ. P. 21.[9] "The permissive language of Rule 21 permits the district court broad discretion in determining whether or not actions should be severed." *Parchman v. SLM Corp.*, 896 F.3d 728, 733 (6th Cir. 2018) (quotations and citation omitted); *see also Louisville Gas & Elec. Co. v. Isaac W. Bernheim Foundation,* 2021 WL 1093638, at *1 (W.D. Kent. March 22, 2021) (the court has "virtually unfettered discretion" in determining whether severance is appropriate under Rule 21).

In deciding whether severance is appropriate under Rule 21, the Court considers a number of factors, including:

(1) whether the claims arise out of the same transaction or occurrence;
(2) whether the claims present some common questions of law or fact;
(3) whether settlement of the claims or judicial economy would be facilitated;
(4) whether prejudice would be avoided if severance were granted; and
(5) whether different witnesses and documentary proof are required for separate claims.

*Parchman*, 896 F.3d at 733. Applying these factors to the claims in this case, the Court finds the relevant considerations weigh overwhelmingly in favor of severing the claims against Floyd.

Regarding the first factor, the claims against Floyd arise from his own, individual prescribing conduct in 2015 and 2016, when he allegedly operated two pill mills in New Orleans and illegally prescribed high volumes of opioids without a legitimate medical purpose. By contrast, the claims against the Manufacturers and KOL doctors allege a 20-year nationwide marketing

---

[8] In light of this finding, the Court does not address Defendants' remaining arguments that Floyd has been fraudulently joined and/or fraudulently misjoined as a Defendant in the case.

[9] Rule 21 provides: "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party." The court may also sever any claim against a party. Fed. R. Civ. P. 21.

campaign that allegedly spread false and misleading information to prescribing doctors and patients about the purported safety and efficacy of prescription opioids. The alleged *decades-long, national* marketing scheme involves different actors engaging in vastly different behavior than Floyd's *short-lived, local* prescribing misconduct. In Plaintiffs' own words, the Manufacturers and KOLs "created" the opioid epidemic (by providing misleading information), whereas Floyd "took advantage" of the opioid epidemic (by illegitimately prescribing high volumes of opioids). Memorandum In Support of Remand at 2 (Doc. #: 1-3 in Case No. 1:18-OP-45372-DAP). The improper prescribing claims against Floyd clearly arise from a different nucleus of facts than the fraudulent marketing claims against the Manufacturers and KOLs.[11] *See, e.g., Cnty. Comm'n of McDowell Cnty. v. McKesson Corp.*, 263 F. Supp.3d 639, 464 (S.D. W.Va. 2017) (the county's claims against an individual doctor, who improperly prescribed opioids, arose out of different transactions than the county's claims against the distributors, which allegedly flooded the county with opioids).[12] Accordingly, the first factor weighs in favor of severance.

As to the second factor, the Court finds any common questions of law or fact are tangential at best. Regarding the Manufacturers and KOLs, the operative facts and legal issues involve whether the alleged fraudulent scheme existed and, if so, whether it created the national opioid epidemic, causing harm to Plaintiffs. Regarding Floyd, the claims focus on whether he had a legitimate medical basis to prescribe opioids to patients who visited his clinics in 2015 and 2016. While there may be some common background facts, such as the addictive quality of prescription

---

[11] The Court applies a flexible, "case-specific inquiry" to determine whether the claims arise out of the same transaction or occurrence. *Reynolds v. Merck Sharp & Dohme Corp.*, 2016 WL 3090951, at *2 (N.D. Ohio June 2, 2016).

[12] In *McKesson,* Judge Faber severed the county's claims against the nondiverse prescribing doctor under the fraudulent misjoinder doctrine and retained diversity jurisdiction over the county's claims against the distributor defendants, which were then transferred to this MDL. *See McKesson,* 263 F.Supp.3d at 645-647; JPML Transfer Order (Doc. #84 in Case No. 1:17:op-45066). Here, the Court reaches a similar result by applying Rule 21.

opioids, any evidentiary overlap is minimal and general in nature. The most relevant underlying facts and the crux of the legal theories for relief are separate and distinct. Accordingly, the second factor also weighs in favor of severing the claims against Floyd.

Regarding the third factor, the Court finds that retaining the claims against the Manufacturers and KOLs in this MDL will increase the potential for settlement, the efficiencies to the parties, and judicial economy . *See Mayfield v. London Women's Care, PLLC*, 2015 WL 3440492, at *5 (E.D. Ky. May 28, 2015) (severing claims against the nondiverse, unnecessary defendant, and noting that, by transferring the claims against the diverse defendant to the MDL, the cost and burden of litigating against the MDL defendant would drop considerably, the ability to potentially negotiate a settlement would be greatly enhanced, and discovery could proceed more efficiently); *Joseph v. Baxter Int'l Inc.*, 614 F. Supp.2d 868, 872 (N.D. Ohio 2009) (finding no undue prejudice in severing claims against nondiverse, unnecessary defendants in order to retain diversity jurisdiction over the MDL defendant, where settlement was "probably more likely" in the MDL; and even if the case did not settle, plaintiffs would benefit from the MDL process by sharing the burden and expense of discovery against the MDL defendant); *cf. Aramouni v. Cook Medical*, 2015 WL 5661040, at *3 (N.D. Ohio Sept. 24, 2015) (declining to sever claims against the nondiverse, unnecessary defendant in a single, *non-MDL* case, making the distinction that "MDL cases involve both judicial and economic efficiency issues not present" in a single case). Thus, the third factor favors severance.

Further, as to the fourth factor, the Court finds that severing the claims against Floyd will avoid prejudice to all parties. In particular, Plaintiffs will still have an adequate remedy to proceed on their claims against Floyd in state court, and Floyd will avoid the expense and distraction inherent in being a small player in a multi-party fraud case. *See Joseph*, 614 F. Supp.2d at 873

(finding no undue prejudice in severing claims where plaintiffs could still proceed against the nondiverse healthcare defendants in state court); *DeGidio v. Centocor, Inc.*, 2009 WL 1867676, at *5 (N.D. Ohio June 29, 2009) (same). On the other hand, the Manufacturer and KOL Defendants would be greatly prejudiced if they were denied the ability to defend against Plaintiffs' claims in this MDL. *See Aramouni*, 2015 WL 5661040, at *3 ("to deny severance for MDL cases would effectively deny a defendant the ability to expeditiously defend against a large volume of actions asserting the same wrongdoing"). Accordingly, the fourth factor also weighs in favor of severance.

Finally, the Court finds the fifth factor supports severance too, because different witnesses and documentary proof will clearly be required for the different claims. As discussed, Floyd's alleged criminal behavior in purposefully prescribing opioids to patients without a legitimate medical need involves very different conduct than the other Defendants' alleged scheme to spread false information about the safety and efficacy of prescription opioids. The evidence necessary for trial of the claims against Floyd is almost entirely distinct from the evidence necessary for trial of the claims against all other Defendants.

In sum, the Court finds the relevant factors weigh strongly in favor of severing the claims against Floyd. In reaching this conclusion, the Court notes Floyd is not a necessary party under Rule 19, Fed. R. Civ. P.[13] *See Safeco Ins. Co. of Am. v. City of White House, Tenn.*, 36 F.3d 540, 545 (6th Cir. 1994) ("Rule 21 … permits a district to retain diversity jurisdiction over a case by dropping a nondiverse party if that party's presence in the action is not required under [Rule 19].").

---

[13] A party is necessary for just adjudication under Rule 19 if: "(1) complete relief cannot be given to existing parties in his absence; (2) disposition in his absence may impair his ability to protect his interest in the controversy; or (3) his absence would expose existing parties to substantial risk of double or inconsistent obligations." *Joseph*, 614 F. Supp.2d at 872 (quoting *Safeco*, 36 F.3d at 546) (citation omitted); Fed. R. Civ. P. 19. If a party is necessary, the Court must then then determine if he is indispensable by considering whether: "1) a judgment rendered in the party's absence would prejudice the available party; 2) such prejudice could be lessened or avoided; 3) a judgment rendered in the party's absence would be adequate; and 4) the plaintiff has an adequate remedy if the action is dismissed for nonjoinder." *Joseph*, 614 F. Supp.2d at 872.

In particular, Floyd's presence is not required to adjudicate or award complete relief on the fraudulent marketing claims against the Manufacturers and KOL doctors, and resolution of the marketing claims will not in any way affect Floyd's potential liability or ability to defend against the improper prescribing claims. *See Joseph*, 614 F. Supp.2d at 872 (healthcare provider defendants were not necessary parties where resolution of the medical malpractice claims against them would not resolve plaintiff's product liability claims against the drug manufacturer); *DeGidio*, 2009 WL 1867676, at *3 (healthcare provider defendants were not necessary parties where the medical malpractice claims against them involved different legal standards and different factual allegations than the product liability claims against the drug company defendants).[14]

Plaintiffs assert this case is similar to *In re Xarelto (Rivaroxaban) Prod. Liab. Litig.*, 2016 WL 4409555 (E.D. La. Aug. 19, 2016), where the court declined to sever the plaintiffs' medical malpractice claims against the deceased patient's healthcare providers from their product liability claims against the drug manufacturer. But in that case, the plaintiffs asserted both groups of defendants were responsible for a single personal injury (the death of a patient). The court found that common questions of law and fact linked the claims, and plaintiffs had a "strong strategic interest" in playing the parties against each other in the same lawsuit. 2016 WL 4409555, at *6. Under those circumstances, the *Xarelto* court gave deference to the plaintiffs' choice of forum to bring all claims in state court, despite an MDL involving product liability claims against the drug manufacturer. *Id.* At *7.

Here, the Court declines to follow *Xarelto*. As an initial matter, other courts, including courts in this District and in the Sixth Circuit, have reached opposite conclusions on similar facts.

---

[14] Because Floyd is not a necessary party, the Court need not determine whether he is indispensable. *See Mayfield*, 2015 WL 3440492, at *5 (a party that is unnecessary cannot be indispensable); *DeGidio*, 2009 WL 1867676, at *4 (same).

10

*See, e.g., Joseph*, 614 F. Supp.2d at 872-874 (severing the malpractice claims and retaining diversity jurisdiction over the product liability claims against MDL defendants); *DeGidio*, 2009 WL 1867676, at *2-5 (same); *Mayfield*, 2015 WL 3440492, at *3-5 (same).[15] More important, the facts of this case are distinguishable. As discussed, the unlawful prescribing claims against Floyd arise from different facts and occurrences than the fraudulent marketing claims.  Unlike *Xarelto*, the claims against the different Defendants are not for a single personal injury; Floyd's potential liability is not tied to that of the other Defendants; and Plaintiffs do not have a strategic interest in playing the Defendants against each other in the same lawsuit.  In short, any arguable connection between Floyd's improper dispensing conduct and the alleged fraudulent marketing scheme is far more attenuated than those cases where a plaintiff's single personal injury allegedly stems from medical malpractice and/or defective products or drugs related to her medical treatment.

On the facts alleged in this case, the Court finds principles of fundamental fairness and judicial efficiency favor severing the claims against Floyd, remanding those claims to state court, and retaining diversity jurisdiction over the remaining claims against the other Defendants.

### IV. Conclusion

The Motion to Remand filed by Plaintiffs Louisiana Health and Indemnity and HMO Louisiana is hereby GRANTED in part.  Plaintiffs' claims against Defendant Frederick Floyd,

---

[15] At bottom, these cases are highly individual and fact specific.  *Compare Xarelto,* 2016 WL 4409555, at *6-7 (finding the medical malpractice and product liability claims arose from a common factual source and shared numerous intermingled questions of law and fact) *with Mayfield*, 2015 WL 3440492, at *4 (finding the medical malpractice claim was "highly distinct" and based on "completely different factual allegations" than the product liability claims) and *DeGidio*, 2009 WL 1867676, at *3 (finding the medical malpractice allegations differed from the product liability claims in that the malpractice claims involved how the healthcare defendants diagnosed and treated the plaintiff, whereas the product liability claims focused on the drug companies' manufacturing, distributing, and marketing conduct); *see also Tinsley v. Streich*, 143 F. Supp.3d 450, 459-460 (W.D. Va. 2015) (finding the plaintiff's personal injury claims alleging medical malpractice and product liability had a "logical relation to one another" and arose out of the same occurrence) (declining to sever the malpractice claims).

M.D., are hereby severed from this case and remanded to the 19th Judicial District Court for the Parish of East Baton Rouge.  The Motion to Remand is DENIED with respect to the remaining claims and Defendants.

    **IT IS SO ORDERED.**

                                            /s/ Dan Aaron Polster   February 22, 2023
                                            **DAN AARON POLSTER**
                                            **UNITED STATES DISTRICT JUDGE**